CONCURRENCE
BOGGS, Circuit Judge,
concurring.
I
I concur with my colleagues that the Supreme Court’s decision in Taylor and subsequent cases settle the question before us today and require us to overrule Nance. I write separately, however, to respond to statements made in the dissenting opinion regarding (1) whether burglary of a vehicle “designed or adapted for the overnight accommodation of persons,” Tenn. Code § 39-14-401(1), was a kind of burglary that the Taylor Court would have counted as a “generic” ACCA burglary, and (2) whether vehicles designed or adapted for overnight accommodation are dwellings.
A
The dissent’s argument, at bottom, is this: the Tennessee statute before us punishes burglary of a vehicle only when the vehicle is designed or adapted for overnight accommodation (i.e., only when the vehicle is a dwelling), unlike statutes that punish burglary of any vehicle or burglary of vehicles designed for business, and thus the Tennessee statute before us goes no further than to punish burglary of a dwelling. Any burglary of a dwelling, the dissent reasons, must necessarily be a generic ACCA burglary, because the ACCA’s definition of burglary is “broader” than (and thus wholly includes as a subset) common-law burglary of a dwelling. So the Tennessee statute is not too broad.
I will put aside, for now, the question whether these vehicles are, in fact, common-law dwellings, for even if they are, the Tennessee statute is still broader than generic ACCA burglary, and Taylor still requires us to reverse Nance.
That is because, if we are bound to follow the Supreme Court’s ruling in Taylor, then we are bound to apply its definition of generic burglary—as the majority notes, “a good rule of thumb” for reading the Court’s decisions is that what the Court says and what it means “are one and the same,” Mathis v. United States, — U.S. -, 136 S.Ct. 2243, 2254, 195 L.Ed.2d 604 (2016), and what the Court said in Taylor is not, as the dissent would have it, that generic ACCA burglary is “broader” than burglary of a dwelling. Indeed, the Court uses the term “broader” (or “broad” or “broadly”) only (1) to describe definitions in the Model Penal Code as encompassing more conduct than traditional common-law burglary, Taylor v. United States, 495 U.S. 575, 580, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); (2) to discuss the extent to which Congress, in enacting the current version of the ACCA, intended to include more crimes as predicates for the career-criminal designation, id. at 583, 110 S.Ct. 2143 (“[T]he time has come to broaden [the] definition [of career criminal] so that we may have a greater sweep and more effective use of this important statute.” (quoting 132 Cong. Rec. 7697 (1986))), 586, 110 S.Ct. 2143 (“H.R. 4639, on the other hand, was seen as too broad.”); (3) to cite a floor statement proposing a definition of ACCA burglary that was “intended to be broader than common law burglary”—but that was not adopted, 590 n.5, 110 S.Ct. 2143 (quoting 135 Cong. Rec. 23519 (1989)); (4) to describe state statutory definitions of burglary that encompass more conduct than traditional common-law burglary, 591, 110 S.Ct. 2143 (describing California statute as defining, burglary “so broadly as to include shoplifting”); or—and this cuts against the dis *864 sent’s argument—(5) to describe state statutes that “includ[e] places, such as automobiles,” as “defin[ing] burglary more broadly” than generic ACCA burglary, id. at 599,110 S.Ct. 2143.
Never, not once, does the Taylor Court state or imply that generic ACCA burglary—as opposed to one of the rejected proposed definitions of generic burglary—is “broader” than common-law burglary of a dwelling so as to include all burglaries of dwellings within the set of generic ACCA burglaries. Contra Dissenting Op. at 876 (stating that the Court “opted instead for a ‘broader “generic” definition’ drawn from the Model Penal Code” (emphasis omitted) and citing pages 580, 592, and 599, 110 S.Ct. 2143 of Taylor, none of which affirm the proposition that Taylor’s definition of generic ACCA burglary is “broader” than common-law burglary and “drawn from” the Model Penal Code).
None of the above, of course, refutes the dissent’s argument; it merely calls into question a premise on which the dissent’s argument rests. Taylor’s pronouncement of its definition of generic ACCA burglary, however, does refute the dissent. Taylor supports its definition of generic ACCA burglary (“an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime,” 495 U.S. at 598, 110 S.Ct. 2143 (emphasis added)) with a single source: “Wayne LaFave’s classic treatise,” the majority notes, which identifies the place (“the place,” in the singular) of a burglary as a “building” or “structure” and then notes that “[sjome burglary statutes also extend to still other places, such as all or some types of vehicles.” Wayne R. LaFave & Austin W. Scott, Jr., 2 Substantive Criminal Law § 8.13, at 471 (1986) (emphases added) (footnote omitted).
True, “some types of vehicles” could, in the abstract, refer to vehicles designed for trade or other purposes besides the overnight accommodation of persons. But here, “some types of vehicles” refers specifically to vehicles adapted for the overnight accommodation of persons. That means that vehicles, even if adapted for overnight habitation, are “other places” that do not fit within the definition of “building or structure” adopted by the Taylor Court.
We know this because, on the very same page of LaFave’s treatise that the Supreme Court cites as the sole support for its “building or structure” definition (page 471), the treatise cites the following Texas statute as an example of a statute that punishes burglary of “other places” rather than buildings or structures:
§ 30.01. Definitions
In this chapter:
(1) “Habitation” means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:
(A) each separately secured or occupied portion of the structure or vehicle; and
(B) each structure appurtenant to or connected with the structure or vehicle.
§ 30.02. Burglary
(a) A person commits an offense if, without the effective consent of the owner, he:
(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft;
[[Image here]]
Tex. Penal Code §§ 30.01, 30.02 (1986) (emphasis added).
Strikingly, this Texas statute punishes the burglary of buildings or habitations, where habitation is defined as a structure or a vehicle “that is adapted for the overnight accommodation of persons.” If the Supreme Court is, as it says it is, relying *865 on LaFave’s treatise to provide the “generic, contemporary meaning of burglary,” Taylor, 495 U.S. at 598, 110 S.Ct. 2148, then it would seem that the Supreme Court, like LaFave, has found that Texas’s statute punishes burglary of “other places,” LaFave & Scott, supra, at 471, other than buildings or structures.
Compare the Texas statute with the Tennessee statute before us, which defines “habitation” as “any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons,” including “a self-propelled vehicle that is designed or adapted for the overnight accommodation of persons and is actually occupied at the time of initial entry by the defendant.” Tenn. Code § 39-14-401(1). Sure, the Tennessee statute is narrower than the Texas statute to the extent that it applies only when the vehicle is “actually occupied at the time of’ the burglary. But this distinction is irrelevant to our analysis; as the majority opinion notes, Taylor[1] s definition is the definition of “a place’s form and nature,” not its use at the time of the crime. Majority Op. at 858. And no one argues here that the presence (or not) of an individual within a burgled vehicle temporarily converts the vehicle into a building or structure—rather, the question is whether the vehicle, if adapted for overnight accommodation, is a building or structure for the purpose of generic burglary.
Because the Supreme Court, in pronouncing the very definition of generic burglary that we must apply today to evaluate convictions under the Tennessee statute, rejected the nearly identically worded Texas statute above as too broadly defining burglary to qualify as generic ACCA burglary, then the majority is right to reject the Tennessee statute as broader than generic ACCA burglary for the same reason.
The dissent notes that the Supreme Court’s discussions of various burglary statutes (such as Missouri’s statute, in’ Taylor, or Iowa’s, in Mathis) aren’t really applicable to Tennessee’s statute because those statutes “covered all vehicles.” Dissenting Op. at 878. But the Supreme Court has made clear that burglary statutes are broader than ACCA generic burglary when they include burglary of any vehicle at all—even just vehicles adapted for overnight accommodation. The Missouri and Iowa statutes may have been so broad as to include the entire class of vehicles, but nothing in Taylor or any other Supreme Court decision supports the idea that, if those statutes had limited their inclusion of vehicles to a subset of habitable vehicles, they would have been narrow enough to count as ACCA predicates. The majority opinion’s discussion in Part II.B supports this point as well: the Taylor Court considered and rejected a definition such as “building or occupied structure.” Majority Op. at 860; see Taylor, 495 U.S. at 598 & n.8, 110 S.Ct. 2143. The Court could have said “building or structure or dwelling.” It could have said “building or structure or other dwelling.” It could have said “building or structure or other place adapted for overnight accommodation.” But it didn’t. It said “building or structure,” and that is the definition that we must apply. If the burgled place is not a building or structure, then the burglary is not generic.
B
I would also note that despite Taylors references to the Model Penal Code, it did not adopt a definition of burglary “drawn from” the Model Penal Code. Contra Dissenting Op. at 876-77. The Court’s “building or structure” definition approximates usage from the Model Penal Code, to be sure, but the Model Penal Code’s definition of burglary cited in Taylor is undoubt *866 edly broader than generic ACCA burglary because it includes burglary of vehicles used only for business purposes:
§ 221.0. Definitions.
In this Article, unless a different meaning plainly is required:
(1) “occupied structure” means any structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present.
Model Penal Code § 221.0 (Am. Law Inst. 1985) (emphasis added).
§ 221.1. Burglary.
(1) Burglary Defined. A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.
Model Penal Code § 221.1. Thus, for example, under the Model Penal Code, an eleven-year-old’s surreptitious entry into the freezer compartment of an unattended Good Humor ice cream truck would be a burglary of an occupied structure.
What Taylor does characterize as “practically identical” to its definition of generic burglary is the 1984 definition of burglary from the statute that preceded the ACCA. Taylor, 495 U.S. at 598, 110 S.Ct. 2143. That statute defined burglary as “any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense.” Armed Career Criminal Act of 1984, Pub. L. No. 98-473, § 1803, 98 Stat. 1837, 2185 (emphasis added). No one would argue that “building” in the Armed Career Criminal Act of 1984 had so expansive a meaning as to cover vehicles, even those adapted for the overnight accommodation of persons. Rather, the Court’s reference to this statute shows that it had buildings in mind, not “dwellings,” when it defined the place of a generic burglary as a “building or structure.”
The majority thus rightly determines that Taylor*s generic ACCA burglary is not Model Penal Code burglary, nor is it “broader” than Model Penal Code burglary (so as to include all Model Penal Code burglaries as a subset), nor is it “broader” than common-law burglary (so as to include all common-law burglaries as a subset). Taylor*s description of generic ACCA burglary as including structures “other than dwellings,” such as warehouses, in no way requires modifying Taylor*s definition to include all burglaries of dwellings. Taylor, 495 U.S. at 593, 110 S.Ct. 2143. Therefore, even if a vehicle outfitted for overnight accommodation is a dwelling, burglary of such a vehicle—according to Taylor and its definition drawn from La-Fave’s treatise—is not a generic ACCA burglary, because it is not a burglary of a building or structure.
II
The discussion above presumed that vehicles could be dwellings. But it is at least arguable that no matter how well suited for sleeping, vehicles do not fit within the traditional meaning of dwelling, at least for the purposes of the law of burglary. The dissent, quoting Black’s Law Dictionary (10th ed. 2014), would hold that “the traditional meaning of ‘dwelling’ ” includes vehicles so long as they are “used or intended for use as a human habitation.” Dissenting Op. at 877.
But Blackstone’s Commentaries on the Laws of England—cited by Taylor, 495 U.S. at 580 n.3, 593 n.7, 110 S.Ct. 2143, as the source of its understanding of common-law burglary—rejects the notion that a tent or a vehicle could be the subject of a burglary:
*867 “Neither can burglary be committed in a tent or booth erected in a market or fair; though the owner may lodge therein'. for the law regards thus highly nothing but permanent edifices; a house or church, the wall, or gate of a town; and it is the folly of the owner to lodge in so fragile a tenement: but his lodging there no more makes it burglary to break it open, than it would be to uncover a tilted [i.e., covered] waggon in the same circumstances.”
4 William Blackstone, Commentaries *226 (emphases added) (footnotes omitted); see also id. at *224-26; Sir Edward Coke, 3 Institutes of Latos of England, ch. XIV (“A tent or booth in fair or market is not domus mansionalis [a dwelling house that may be the place of a burglary],” even though “every house for the dwelling and habitation of man is taken to be a mansion-house, wherein burglary may be committed”)- And, insofar as we seek to determine the traditional common-law understanding of a dwelling, Blackstone beats Black’s.
Moreover, the dissent cites the most recent edition of Black’s Law Dictionary, published in 2014; in earlier editions, however, Black’s Law Dictionary defined a dwelling house—again, for the purposes of the law of burglary—simply as “[a] house in which the occupier and his family usually reside, or, in other words, dwell and lie in.” E.g., Dwelling House, Black’s Law Dictionary (rev. 4th ed. 1968).
What the true common-law definition of burglary was—and whether that could include “uncover[ing] a tilted waggon”—is an interesting question, and there are certainly jurisdictions that would adopt the dissent’s understanding. But it is not a question for us to decide, for the Supreme Court already consulted these very same sources in deciding Taylor, and—at least insofar as the ACCA is concerned—the Supreme Court has made clear that no burglary of a vehicle constitutes generic burglary, not even burglary of a vehicle that serves as a primary residence.
The majority’s result here is not, therefore, “contrary” to Taylor, as the dissent asserts. Dissenting Op. at 878. Rather, it is compelled by Taylor.
Ill
Admittedly, the Court’s ACCA jurisprudence (and our adoption of it) produces bizarre results, some of which the dissent cites. There will be cases where a sentencing court, in applying the categorical approach, must, for example, turn a blind eye to a defendant’s prior convictions for burgling houses merely because the applicable burglary statute allows for the possibility of conviction for burgling an RV, even if, factually, the court knows full well that the defendant standing before it habitually burgled houses. And Congress, surely, would have wanted to include convictions for burgling houses as ACCA predicates. But we are bound by Taylor, and the Court has consistently reinforced Taylo'ds bright-line “building or structure” definition over the past twenty-seven years, as the majority opinion well explains. See Majority Op. at 857-59.
Just last year, Justice Alito compared the Court’s ACCA jurisprudence to the journey of a Belgian woman who, having set out to pick up a friend at the Brussels train station 38 miles from home, followed her GPS for 900 miles in the wrong direction before realizing—in Zagreb, Croatia—“that she had gone off course,” at which point she finally decided to call home. Mathis, 136 S.Ct. at 2267 (Alito, J., dissenting). “Along the way from Taylor to the present case,” Justice Alito wrote, “there have been signs that the Court was off course and opportunities to alter its course. Now the Court has reached the legal equivalent of Ms. Moreau’s Zagreb. *868 But the Court, unlike Ms. Moreau, is determined to stay the course and continue on, traveling even further away from the intended destination. Who knows when, if ever, the Court will call home.” Id. at 2271.
Perhaps the Court will call home soon: it recently vacated and remanded a Fifth Circuit decision for reconsideration where the Fifth Circuit had upheld the use of a conviction under Texas Penal Code § 30.02(a) as a generic ACCA burglary even though the Texas burglary statute incorporates the very same definition of “habitation” in Texas Penal Code § 30.01(1) discussed in Part I.A, supra. United States v. Herrold, 813 F.3d 595 (5th Cir.), vacated, — U.S.-, 137 S.Ct. 310, 196 L.Ed.2d 209 (2016). On remand, in a one-page opinion that relies and rests on Fifth Circuit precedent, the Fifth Circuit reaffirmed its holding that Texas burglary of a habitation is an ACCA burglary. United States v. Herrold, No. 14-11317, 685 Fed.Appx. 302, 2017 WL 1326242 (5th Cir. Apr. 11, 2017) (per curiam). In light of these developments, then, it seems worthy of mention that three decisions cited in the dissent as supporting the Government’s position—decisions of the Fifth, Ninth, and Tenth Circuits—are ones that uphold the use of the very same Texas burglary statute as generic ACCA burglary. See United States v. Silva, 957 F.2d 157, 161-62 (5th Cir. 1992); United States v. Sweeten, 933 F.2d 765, 770 (9th Cir. 1991) (per curiam); United States v. Spring, 80 F.3d 1450, 1461-63 (10th Cir. 1996); Dissenting Op. at 879-80.
Moreover, the Eighth Circuit seems recently to have adopted the Supreme Court’s understanding of generic ACCA burglary in two decisions in which it held that Wisconsin and Arkansas burglary statutes were broader than generic ACCA burglary. United States v. Sims, 854 F.3d 1037, 1040 (8th Cir. 2017) (“[JJust as it was inconsequential that Wisconsin’s statute limited burglary to motor homes, it is inconsequential that Arkansas’s statute confines residential burglary to vehicles ‘[i]n which any person lives’ or ‘[t]hat [are] customarily used for overnight accommodation.’ Ark. Code Ann. § 5-39-101(4)(A); see also United States v. Forrest, 611 F.3d 908, 913 (8th Cir. 2010) (finding a Colorado burglary statute was categorically broader than generic burglary because it covered vehicles adapted for overnight accommodations).” (alterations in original) (emphasis added)); United States v. Lamb, 847 F.3d 928, 931 (8th Cir. 2017) (upholding use of Wisconsin burglary conviction as ACCA predicate where the Wisconsin statute was divisible, listing several separate crimes, some of which encompassed “a broader range of conduct than generic burglary as defined in Taylor,” but where the defendant had been convicted under a subsection that was not broader than generic burglary).
Given the similarity between the Texas statute at issue in Herrold, Sweeten, and Spring, and the Tennessee statute at issue here, perhaps the Court will soon clarify the question before us—a question that occupies a significant portion of the federal judiciary’s docket. But, until then, it is not incumbent upon us to rewrite the ACCA to include all burglaries of dwellings within its definition of burglary, even if that is what Congress would have wanted.
IV
The dissent proposes an “easy way” and a “more complicated way” to resolve this case. What both ways have in common is that they presume, contrary to Taylor, that generic ACCA burglary must be a category of burglaries that “extends beyond” (so as to include) or “encompasses]” common-law burglary. Dissenting Op. at 876, 876-77 (first quoting from *869 the easy way, then quoting from the more complicated way).
A simple diagram illustrates the dissent’s understanding:
[[Image here]]
This understanding has a certain appeal and is, admittedly, quite easy to follow— any burglary of a dwelling, whether of a vehicle or otherwise, counts as a generic ACCA burglary, so if a burgled vehicle is a dwelling, then the burglary was a generic ACCA burglary. But elegance is no substitute for accuracy.
Instead, the following diagram more correctly illustrates the Supreme Court’s ACCA jurisprudence:
*870 [[Image here]]
As this diagram indicates, the Supreme Court’s test for whether a burglary is a generic ACCA burglary is whether the burgled place is a building or structure, not whether it is a dwelling, although certainly there will be significant overlap between the set of common-law burglaries and the set of generic ACCA burglaries. Having removed the presumption that every common-law burglary of a dwelling must be an ACCA burglary, then, it is easier to see that, even if vehicles can be dwellings (which, at common law, they arguably are not—see Part II, supra), they are still not buildings or structures, and so their burglary cannot be a generic ACCA burglary.
Perhaps one reason why this is so complicated is that states have defined building or structure to include things that plainly aré not buildings or structures. E.g., Ariz. Rev. Stat. § 13-1501 (defining “structure,” for purpose of Arizona Criminal Trespass and Burglary laws, as “any device that accepts electronic or physical currency and that is used to conduct commercial transactions [e.g., an ATM], any vending machine [e.g., a gumball or other candy machine] or any building, object, vehicle, railroad car or place with sides and a floor ... used for lodging, business, transportation [e.g., a red Radio Flyer wagon], recreation [e.g., a jai alai court] or storage [e.g., a rolling garbage bin]” (emphasis added)); Haw. Rev. Stat. § 708-800 (providing no definition for “structure,” but defining “building” as “any structure, and the term also includes any vehicle, railway car, aircraft, or watercraft used for lodging of persons therein”). In Arizona, *871 then, “structures” would include such devices as credit-card payment terminals and such places as a swimming pool or a horse’s trough. And in Hawaii, a state that is no stranger to red-eye flights, an aircraft—perhaps depending on how well its first-class cabin is suited for overnight accommodation—may evidently be a flying “building,” for purposes of the criminal burglary laws.
But even if state legislatures, in classifying various places or objects as buildings or structures, have not always meant what they have said, presumably the Supreme Court has—and presumably the Supreme Court also meant what it said about meaning what it says. I therefore concur in the majority’s opinion, even if, as the dissent charges, I thereby risk “mak[ing] the mistake of reading [a Supreme Court opinion] like a statute.” Dissenting Op. at 878.

. The dissent at times refers to the "traditional meaning” of dwelling, rather than the common-law meaning. Because the Taylor Court referred to "the traditional common-law defl-nition," 495 U.S. at 580, 110 S.Ct. 2143, and the dissent does not otherwise discuss the common-law definition of "dwelling,” I assume no distinction is intended.