In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1504

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JASON J. NEBINGER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 16 CR 40024 — **James E. Shadid**, *Judge.*

ARGUED MARCH 31, 2020 — DECIDED FEBRUARY 11, 2021

Before KANNE, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* After Jason Nebinger pleaded guilty to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the Probation Office determined that he qualified as an armed career criminal, based on his prior convictions for Illinois residential burglary, drug possession with intent to deliver, and aggravated battery. See the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). This had dire consequences for Nebinger: it

changed his sentencing exposure from a *maximum* sentence of 10 years to a *minimum* sentence of 15 years. Nebinger objected to the use of the residential-burglary conviction to support the enhancement, but he said nothing about the other two prior convictions. The district court agreed with Nebinger that his residential-burglary conviction was an improper ACCA predicate. The court imposed a sentence of 10 years' imprisonment, along with three years of supervised release.

The government appealed, and we vacated and remanded in light of our decision in *Smith v. United States*, 877 F.3d 720 (7th Cir. 2017), in which we held that the Illinois residential-burglary statute corresponds to generic burglary for ACCA purposes. *United States v. Nebinger*, No. 17-3411 (7th Cir. Feb. 27, 2018). That decision meant that Nebinger did qualify as an armed career criminal. At resentencing, the district court increased his prison sentence to 15 years (180 months), the minimum under the ACCA, see § 924(e)(1).

This time Nebinger has appealed. First, entirely apart from his ACCA point, he contends that his guilty plea should be vacated based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that the government must prove that the defendant knew that he fell within one of the categories of people who are not entitled to possess guns. Second, he argues his residential-burglary and drug-offense convictions under Illinois law cannot be used as ACCA predicates.

We are satisfied that *Rehaif* does not undermine the validity of Nebinger's guilty plea, and so we affirm his conviction. His sentence is another matter. While this litigation has been pending, the Illinois Supreme Court has authoritatively ruled on the scope of the state offense, and in so doing, has clarified

that it cannot be used for ACCA purposes. We therefore remand for resentencing.

## I

In *Rehaif*, the Supreme Court held that in a prosecution for possession of a firearm by a restricted person, the government must prove that the defendant knew both that he possessed the firearm and that he was in one of the categories of restricted persons under 18 U.S.C. § 922(g). 139 S. Ct. at 2194. One of these categories covers a person who has "been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). In *United States v. Maez*, 960 F.3d 949 (7th Cir. 2020), we clarified that the knowledge element requires only that the defendant knew, at the time he possessed the firearm, that he was a felon (as pertinent here); he did not also need to know that his status prohibited him from possessing a firearm. *Id.* at 955.

Nebinger pleaded guilty in 2016 to violating section 922(g)(1). This pre-dated *Rehaif*, and so neither the indictment nor the government's proffered factual basis for the conviction said anything about Nebinger's knowledge of his status as a felon. Nebinger now seeks to vacate his guilty plea as unknowing because he was not made aware of, nor given the opportunity to contest, that element. He did not try to withdraw his guilty plea in the district court, and so our review is only for plain error. *United States v. Williams*, 946 F.3d 968, 971 (7th Cir. 2020).

On plain error review, we consider whether: (1) an error occurred; (2) the error was plain, *i.e.*, clear and obvious; (3) the error affected the defendant's substantial rights, *i.e.*, there is a "reasonable probability that, but for the error, the outcome of

the proceeding would have been different"; and (4) the error
"seriously affects the fairness, integrity or public reputation
of judicial proceedings." *Molina-Martinez v. United States*, 136
S. Ct. 1338, 1343 (2016) (internal quotation marks omitted).

Our recent decisions in *Williams* and *United States v.
Dowthard*, 948 F.3d 814 (7th Cir. 2020), settle this matter. They
show that, while Nebinger can clear the first two hurdles, he
stumbles on the third. With the benefit of *Rehaif,* we know that
"the district court's failure to inquire into [a defendant's]
knowledge of his status or to confirm a factual basis for that
element of the offense" was both an error and an obvious one.
*Williams*, 946 F.3d at 971; see also *Dowthard*, 948 F.3d at 818.
But where is the prejudice? In *Williams*, we said that a defend-
ant seeking to withdraw a guilty plea because of *Rehaif* bears
the burden of persuading the court that there is "a reasonable
probability that he would not have pleaded guilty if he knew
of *Rehaif*." 946 F.3d at 973. Nebinger cannot meet that burden.
He had six prior felony convictions for an array of crimes:
simple burglary, theft, residential burglary, drug possession
with intent to deliver, aggravated fleeing and eluding the po-
lice, and aggravated battery of a police officer. The residential
burglary, drug trafficking, aggravated fleeing and eluding,
and aggravated battery convictions each came with prison
sentences of four or five years, and Nebinger served signifi-
cant time on each one of them. He admitted these prior con-
victions at his plea colloquy. He could not have stood before
the judge and said, with a straight face, that he was unaware
of his status as a person with a prior felony conviction.

As we did in *Williams* and *Dowthard*, we conclude here that
Nebinger was not prejudiced by the *Rehaif* error. There is no
reasonable probability that he would have gone to trial if he

had known that the government would need to prove his knowledge of his status. The district court thus did not plainly err by accepting his guilty plea, and his conviction stands.[1]

## II

Next, we turn to the validity of Nebinger's sentence. Nebinger argues that the district court improperly relied on two of his prior convictions as ACCA predicates, when it abandoned the regular maximum of ten years and used the ACCA minimum of 15 years.

The ACCA is triggered in a prosecution under section 922(g) if the defendant has three previous convictions for either a violent felony or a serious drug offense, he committed those offenses on separate occasions, and each violent felony offense carries a potential sentence of imprisonment exceeding one year. If those criteria are satisfied, the defendant is subject to a mandatory minimum sentence of fifteen years in prison. 18 U.S.C. § 924(e). Burglary is one of the enumerated violent felonies. *Id.* § 924(e)(2)(B)(ii). The statute also defines

---

[1] We recognize that the Fourth Circuit has taken the position that *Rehaif* problems qualify as structural error, and thus that they automatically amount to plain error and entitle the defendant to relief. See *United States v. Gary*, 954 F.3d 194, 205–07 (4th Cir. 2020), cert. granted, No. 20-444, 2021 WL 77245 (mem.), (U.S. Jan. 8, 2021). The Court has also agreed to hear *Greer v. United States*, No. 19-8709, 2021 WL 77241 (mem.), (U.S. Jan. 8, 2021). *Greer* was a decision of the Eleventh Circuit, 798 F. App'x 483 (11th Cir. 2020), which rejected the defendant's contention that a *Rehaif* error was plain error that affected his substantial rights. In light of the grant of certiorari in *Gary* and *Greer*, we have considered whether to hold the present case pending the Supreme Court's decision in those cases. We believe, however, that the best approach for Nebinger is to send this case along its way and allow him to seek relief in the Supreme Court, should the Justices disagree with the approach we have taken.

serious drug offenses, *id.* § 924(e)(2)(A), but that part plays only a minor role in Nebinger's case, and so the details do not matter.

## A

Nebinger contends that his 2000 conviction for Illinois residential burglary cannot be used as an ACCA predicate because the state crime is broader than the corresponding federal crime and thus as a categorical matter does not qualify. See *Taylor v. United States*, 495 U.S. 575 (1990). He reasons as follows: first, the state crime does not require that the place that is burglarized be a "building" or "structure" as those terms are used by the Supreme Court; and second, the state crime does not make breaking and entering, or its equivalent, an element of the offense. For a time, we rejected this position, see *Smith*, 877 F.3d at 724–25, and *Dawkins v. United States*, 809 F.3d 953 (7th Cir. 2016), but upon further thought, we decided to ask the Illinois Supreme Court what falls within the scope of the state statute. See *United States v. Glispie*, 943 F.3d 358 (7th Cir. 2019).

The government contends that it is too late for Nebinger to take advantage of anything the state court said. It argues that he is precluded by the law-of-the-case doctrine and the mandate rule from challenging the applicability of *Dawkins* to his case, because he did not raise this precise challenge in the first appeal. The government says that we may consider only the district court's application of *Smith* and *United States v. Stitt*, 139 S. Ct. 399 (2018), in which the Court addressed the type of structure that the burglary must target. But the government is forgetting a key point: it was the appellant in the first appeal, which occurred because the district court initially had *agreed* with Nebinger. Moreover, Nebinger did

not neglect any argument in the district court. In his initial sentencing memorandum, he challenged the use of his Illinois residential-burglary conviction as an ACCA predicate on both grounds raised here. The validity of the first argument was an open question at the time, and the second argument directly confronted *Dawkins*. The district court decided in Nebinger's favor that Illinois burglary is broader than generic burglary with respect to the nature of the site burglarized, and thus it had no occasion to reach the *Dawkins* breaking-and-entering question.

The government then appealed and requested a summary remand in light of *Smith*, which had recently been issued. Given the government's focus on *Smith*, there was no reason for Nebinger to raise the *Dawkins* issue on his own in his opposition to the government's motion in this court. He did, however, reiterate the *Dawkins* argument in his resentencing memorandum and at the resentencing hearing, to preserve the issue for appeal. The district court, considering itself bound by *Smith* and *Dawkins*, resentenced Nebinger to the ACCA-enhanced statutory minimum of 15 years.

Nothing in this history supports a finding that Nebinger waived his arguments under *Dawkins* and related cases. We therefore proceed to the merits.

*1. Categorical Approach*

Under the categorical approach of *Taylor*, *supra*, clarified in *Descamps v. United States*, 570 U.S. 254 (2013) and *Mathis v. United States*, 136 S. Ct. 2243 (2016), in order to qualify as a prior violent felony for purposes of the ACCA enhancement, the state crime must be defined in the same way or more narrowly than the corresponding federal crime. We focus on the

elements of the crime, which the prosecution must prove at trial, rather than the means. *Mathis*, 136 S. Ct. at 2248–49.

Nebinger's 2000 Illinois conviction for residential burglary rested on 720 ILCS 5/19-3. At the time, the statute provided: "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a). A "dwelling" was defined as follows:

> (a) Except as otherwise provided in subsection (b) of this Section, "dwelling" means a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence. (b) For the purposes of Section 19-3 of this Code, "dwelling" means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside.

720 ILCS 5/2-6.

"Burglary" is an enumerated qualifying violent felony under the ACCA for sentencing-enhancement purposes, 18 U.S.C. § 924(e)(2)(B)(ii). In order to decide whether a state offense falls within the terms of the federal statute, the court must determine whether that state offense corresponds to the generic definition of burglary that is "used in the criminal codes of most States." *Taylor*, 495 U.S. at 598. The Court acknowledged that "the exact formulations vary," but that "the generic, contemporary meaning of burglary contains at

least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.*

### 2. Dwelling Requirement

In *Smith*, we held that Illinois's definition of a "dwelling" for purposes of residential burglary corresponds with the Supreme Court's formulation of "a building or occupied structure." 877 F.3d at 724. Later, the Supreme Court decided *Stitt*, in which it reiterated the standard for generic burglary from *Taylor* and said that "burglary of a structure or vehicle that has been adapted or is customarily used for overnight accommodation" qualifies as generic burglary for ACCA purposes. 139 S. Ct. at 403–04.

Nebinger argues that *Smith* runs afoul of *Stitt* and should be overruled. He says that "the Illinois residential burglary statute extends to places where one actually resides or intends to reside, and not just places adapted for overnight accommodation," and thus "is overbroad and inclusive of places and enclosures beyond those covered in generic burglary" under the Stitt standard. We do not read Illinois's law that way.

The applicable definition of a "dwelling," 720 ILCS 5/2-6(b), does not, as Nebinger urges, include anywhere "owners or occupants actually reside or in their absence intend within a reasonable period of time to reside," regardless of the nature of the place. Instead, it includes only a "house, apartment, mobile home, trailer, or other living quarters[.]" In context, the term "other living quarters" is not as open-ended as Nebinger portrays it. Rather, consistently with *Stitt*, it includes a "structure or vehicle that has been adapted or is customarily used for overnight accommodation." This stands in

contrast with the definition of "dwelling" for all purposes besides residential burglary, which is broader: "a building or portion thereof, a tent, a vehicle, or other enclosed space which is used or intended for use as a human habitation, home or residence." 720 ILCS 5/2-6(a). Given the distinct statutory definitions of "dwelling," it is unreasonable to interpret the term for residential burglary purposes as expansively as Nebinger suggests.

Ultimately, Nebinger provides no compelling reason to overrule *Smith*. His challenge to the use of his residential burglary conviction as an ACCA predicate based on the definition of the term "building" therefore fails.

### 3. Breaking-and-Entering Requirement

Nebinger's challenge to *Dawkins* is a separate matter. *Dawkins* held that the Illinois statute's requirement of an unlawful entry is the "practical equivalent" of the "breaking and entering" requirement of the generic burglary offense for ACCA purposes. 720 ILCS 5/19-3(a); 809 F.3d at 956 (7th Cir. 2016). But in *Dawkins*, we failed to consider the question "whether the limited-authority doctrine applies to the Illinois residential burglary statute." *Glispie*, 943 F.3d at 359. Under that doctrine, authority to enter a building open to the public extends only to the purpose for which the building is open; if someone enters with the intent of committing burglary, the entry will be considered unlawful. *Id.* at 365.

Recognizing the importance of the limited-authority issue, we certified to the Illinois Supreme Court the question whether the limited-authority doctrine applies to residential burglary as well as business burglary. *United States v. Glispie*,

943 F.3d 358, 372 (7th Cir. 2019). The state supreme court answered it in the affirmative. *United States v. Glispie*, No. 125483, 2020 WL 5668984 *1 (Ill. Sept. 24, 2020). With that guidance, we held "that a conviction for residential burglary by entry under the Illinois statute does not qualify as generic burglary as the Supreme Court of the United States has defined that term[] [and] … cannot be used to enhance [a] sentence under the ACCA." *United States v. Glispie*, No. 19-1224, 2020 WL 6055356 at *1 (7th Cir. Oct. 14, 2020). This is so because Illinois does not always require an unlawful or unauthorized entry.

Nebinger's appeal raises the same question as Glispie's did—whether his Illinois residential-burglary conviction can serve as an ACCA predicate. Our answer, consistently with the state supreme court's decision, is that it cannot. Because of the limited-authority doctrine, the state statute reaches more conduct than the federal definition of generic burglary encompasses, and under *Taylor*'s categorical approach, that is the end of the matter.

B

Nebinger also challenges the use of his prior Illinois drug conviction as an ACCA predicate on the basis that it is broader than the corresponding federal law. He argues that the Illinois statute criminalizes both a broader category of controlled substance analogues and a broader category of cocaine isomers.

Nebinger did not object to the use of his prior state drug conviction as an ACCA predicate in the district court, even while he challenged the use of his prior residential burglary conviction. Nor did he raise this claim in the first appeal as an

alternative basis for affirming the district court's determination that the ACCA enhancement does not apply. The government therefore argues that he waived this point. His earlier remand was exclusively for reconsideration of the residential-burglary issue. See *United States v. Whitlow*, 740 F.3d 433, 438 (7th Cir. 2014) ("[A]n issue that could have been raised on appeal but was not is waived and, therefore, not remanded."); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal because the remand did not affect it."). Nebinger tries to avoid waiver by pointing to intervening authorities, including *United States v. Elder*, 900 F.3d 491 (7th Cir. 2018); *United States v. De La Torre*, 940 F.3d 938 (7th Cir. 2019); and *Lorenzo v. Whitaker*, 752 F. App'x 482 (9th Cir. 2019).

But those cases did not make any new argument available to Nebinger. To the contrary, these points are well-trodden. In *Elder*, we held that the categorical approach from *Taylor*, *Descamps*, and *Mathis* applies to our analysis of ACCA-predicate drug offenses under 21 U.S.C. §§ 841 and 802(44). Nebinger could have made the same argument Elder did—that his state drug conviction did not qualify as an ACCA predicate under the categorical approach—in the district court or in the first appeal in 2017. Nothing in either Supreme Court or Seventh Circuit precedent foreclosed it or even made it a long shot.

Nebinger also relies on *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) to support his challenge. In *Ruth*, we found that "the Illinois [cocaine] statute is categorically broader than the federal definition." 966 F.3d at 647. Ruth made the same argument that Elder made and that Nebinger could have made.

See *id.* at 644 ("Ruth now appeals and claims that the district court erred in sentencing him because, using the categorical approach, the overbreadth of the Illinois statute disqualifies his prior conviction as a predicate felony drug offense.").

At a minimum, Nebinger has forfeited this argument; it may even be that he waived it. He has not offered any compelling reason for us to overlook that forfeiture. We thus choose not to reach this point.

### III

We AFFIRM the judgment of conviction, and we VACATE Nebinger's sentence and REMAND to the district court for re-sentencing.